**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Chambers of** | **101 West Lombard Street** |
| **Douglas R. Miller** | **Baltimore, Maryland 21201** |
| **United States Magistrate Judge** | **MDD_DRMChambers@mdd.uscourts.gov** |
| | **(410) 962-7770** |

June 9, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Johnathan B. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-2539-DRM

Dear Counsel:

On August 30, 2024, Plaintiff Johnathan B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF No. 13) and the parties' briefs (ECF Nos. 16, 17, 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on June 4, 2015, alleging a disability onset of May 2, 2001. Tr. 500-06. Plaintiff's claims were denied initially and on reconsideration. Tr. 398-410. On April 2, 2018, an Administrative Law Judge ("ALJ") held a hearing. Tr. 57-95. Following the hearing, on May 1, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 44-51. The Appeals Council denied Plaintiff's request for review, Tr. 7-10, and Plaintiff then appealed to this Court on April 23, 2021, Tr. 837-38. This Court remanded Plaintiff's case to the Commissioner for further consideration on November 22, 2021, pursuant to the parties' consent. Tr. 846-48. On April 16, 2024, a second ALJ held another hearing. Tr. 811-36. On May 15, 2024, that ALJ concluded that Plaintiff was not disabled. Tr. 764-80. The second ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on August 30, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Johnathan B. v. Bisignano*
Civil No. 24-2539-DRM
June 9, 2025
Page 2

07 (2000); *see also* 20 C.F.R. § 422.210(a), which will be discussed herein.

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of May 2, 2001, through his date last insured of September 30, 2005."[3] Tr. 770. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease with radiculopathy, obesity, depression, and anxiety." Tr. 770. The ALJ also determined that Plaintiff suffered from the non-severe impairments of substance use disorder. Tr. 770. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 770. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but never climb ropes, ladders, and scaffolds. He ccould [sic] perform simple, routine tasks, with no production rate for pace of work (e.g., assembly-line work). The claimant could tolerate occasional interaction with the general public.

Tr. 772. The ALJ determined that Plaintiff was unable to perform past relevant work as a composite security guard (DOT[4] #372.667-034) and patroller composite (DOT #376.667-018) but

---

[3] The parties agree that the time period at issue is from June 1, 2006 to March 31, 2008, and that the ALJ's several references to an incorrect time period, May 2, 2001 through September 30, 2005, are typographical errors. *See* ECF No. 16, at 7; ECF No. 17, at 5.

[4] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .* , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of*

*Johnathan B. v. Bisignano*
Civil No. 24-2539-DRM
June 9, 2025
Page 3

could perform other jobs that existed in significant numbers in the national economy. Tr. 777-78. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 779.

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff raises one argument on appeal, specifically that Plaintiff's RFC is unsupported by substantial evidence because the ALJ's decision lacked the required narrative explanation when the ALJ limited Plaintiff to "no production rate for pace of work (e.g., assembly-line work)." ECF No. 16, at 7-12; ECF No. 18, at 1-3. Defendant counters that substantial evidence supports the production rate limitation in Plaintiff's RFC. ECF No. 17, at 6-13.

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)). Social Security Ruling ("SSR") 96-8P details the steps an ALJ must take when assessing a claimant's RFC. *See generally* SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). Specifically, the ruling provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7.

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas—concentration, persistence, and pace ("CPP")—concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP

---

*Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Johnathan B. v. Bisignano*
Civil No. 24-2539-DRM
June 9, 2025
Page 4

means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

"[O]nce an ALJ has made a . . . finding that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)), *report and recommendation adopted*, (D. Md. June 5, 2015). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121-22 (4th Cir. 2020). However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017).

Here, at step three, the ALJ determined that Plaintiff had a moderate CPP limitation. Tr. 771. As support for this determination, the ALJ noted that Plaintiff "reported that he has problems with completing tasks." Tr. 771. The ALJ observed, however, that Plaintiff "reported that he was able to pay attention as long as necessary if not on medications and he could follow written and spoken instructions 'just fine'. Moreover, he reported that his hobbies consisted of reading and watching television; he was able to pay bills, count change, and handle a bank account, and he went shopping by computer." Tr. 771. The ALJ also noted that Plaintiff "testified that he read books—he liked to read horror novels." Tr. 771.

Elsewhere in the ALJ's decision, the ALJ noted that Plaintiff's mental RFC "restricting him to simple, routine tasks, with no production rate for pace of work and occasional interaction with the general public, accommodates and is supported by his diagnosis of depression and anxiety." Tr. 777. The ALJ noted that Plaintiff's mental RFC "is consistent with evidence in the record during the relevant adjudication period on January 10, 2007, that he denied a depressed mood, and it is consistent with his testimony that during the relevant adjudication period, he read horror novels; he cooked, and he occasionally attended worship services." Tr. 777. However, the ALJ did not specifically state whether the production-pace restriction intended to accommodate Plaintiff's moderate CPP limitation.

Although the ALJ appropriately looked to the objective medical evidence of record in reaching the RFC determination, it is unclear how the cited evidence supports the production rate provision at issue. The "logical explanation" for an RFC finding is "just as important as" citing the evidence that reinforces that finding. *Thomas*, 916 F.3d at 311. When an ALJ identifies evidence to support a conclusion but fails to "build an accurate and logical bridge" from the evidence to the conclusion, the ALJ's finding cannot be meaningfully reviewed. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Here, the ALJ failed to explain how the evidence supports the conclusion that Plaintiff could perform simple, routine tasks but could not work at a production rate pace. The Court therefore agrees with Plaintiff that the ALJ erred in assessing this portion of Plaintiff's RFC.

*Johnathan B. v. Bisignano*
Civil No. 24-2539-DRM
June 9, 2025
Page 5

But this conclusion does not end the Court's inquiry.  In reviewing SSA decisions, the Court applies a harmless-error standard.  *See Patterson*, 846 F.3d at 658.  An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009).

Governed by that standard, and having carefully reviewed the entire record, the Court finds that the ALJ's error was inconsequential.  After concluding that Plaintiff had a moderate CPP limitation, the ALJ limited Plaintiff to "simple, routine tasks, with no production rate for pace of work (e.g., assembly-line work)." Tr. 772.  However, the ALJ did not explicitly base these mental RFC provisions on any opinions contained in the record.  *See* Tr. 775-76 (giving great weight to state agency consultant opinions finding insufficient evidence prior to the date last insured); *cf. Sizemore*, 878 F.3d at 80-81 (affirming an ALJ's decision where: (1) the ALJ adopted certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight").

In any event, this Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation.  *See, e.g., Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (holding that the ALJ accounts for the claimant's moderate CPP limitations when limiting the claimant to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]").

Additionally, another district court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

For the reasons discussed above, it is unclear how the ALJ determined that a production rate pace limitation was necessary.  Nevertheless, the Court cannot conclude that the lack of explanation for this pace limitation amounts to reversible error.  To the extent that a pace limitation was necessary at all, the ALJ adopted an RFC provision that was *more* restrictive than anything suggested within the record.  Additionally, Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case.  Plaintiff also fails to explain how a more detailed explanation of either pace or the mental RFC might change the outcome of

*Johnathan B. v. Bisignano*
Civil No. 24-2539-DRM
June 9, 2025
Page 6

this case.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD-15-1694, 2016 WL 5147195, at *10 (D. Md. Sept. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis).  For these reasons, the Court is unable to conclude that remand for additional analysis might result in a more restrictive RFC assessment or a finding of disability.  Thus, the ALJ's error was harmless.  *Kersey*, 614 F. Supp. 2d at 696.  The Court will therefore affirm the ALJ's decision.

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge